**NICOLETTI HORNIG CAMPISE & SWEENEY**
Attorneys for Plaintiff
Wall Street Plaza
88 Pine Street
New York, New York 10005
(212) 220-3830
Attorney: Lawrence C. Glynn (LG 6431)
NHC&S File No.:   00000634JFS/LCG



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

SHANDONG INDUSTRIAL INC.,

                Plaintiff,

    -against-

M/V "RICKMERS GENOA", her engines, boilers, etc.;
M/V "SUN CROSS", her engines, boilers, etc.;
RICKMERS-LINIE GmbH & CIE. KG,
RICKMERS GENOA SCHIFFAHRTSGES mbH
& CIE. KG, GENOA NAVIGATION CO. LTD.,
C S MARINE CO., LTD., SUNWOO
MERCHANT MARINE CO. LTD.,
ESM GROUP, INC., ESM (TIANJIN) CO., LTD.,
CHEM ONE LTD., PUDONG TRANS USA INC.
and U.S. SHIPPING, INC.,

                Defendants.

-------------------------------------------------------------x

Case No.:   05 Civ. 6226  (LAP)

**THIRD AMENDED**
**VERIFIED COMPLAINT**

      Plaintiff, Shandong Industrial Inc. ("SII" or "Plaintiff") by its attorneys, Nicoletti Hornig

Campise & Sweeney, alleges upon information and belief, as follows:

      1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure.

2.     At and during the times hereinafter mentioned, plaintiffs had and now have the legal status and principal place of business stated in Schedule "A" attached hereto and by this reference made a part hereof.

3.     At and during all the times hereinafter mentioned, defendants *M/V Rickmers Genoa*, her engines, boilers, etc., *M/V Sun Cross*, her engines, boilers, etc., Rickmers-Linie GmbH & Cie. KG, Rickmers Genoa Schiffahrtsges mbH & Cie. KG, Genoa Navigation Co. Ltd., C S Marine Co., Ltd., Sunwoo Merchant Marine Co. Ltd., Pudong Trans USA Inc., and U.S. Shipping, Inc. (hereinafter "Vessel Defendants") had and now have the legal status and offices and places of business stated in Schedule "A", and were and now are engaged as common carriers of merchandise by water and owned, operated, managed, chartered and controlled the above matter vessels which is now, or will be within the jurisdiction of this Court during the pendency of this action.

4.     At and during all the times hereinafter mentioned, defendants ESM Group, Inc., ESM (Tianjin) Co., Ltd., Pudong Trans USA Inc., and U.S. Shipping, Inc., (hereinafter "Super Sul Defendants") had and now have the legal status and offices and places of business stated in Schedule "A", and were and now are engaged as manufacturers, distributors, shippers and/or consignees of a certain cargo of six hundred (600) bags containing Super Sul Mg 89 carried aboard the      *M/V Rickmers Genoa* pursuant to Rickmers-Linie bill of lading number RCKI153XINCAM41, dated March 3, 2005.

5.     At and during all the times hereinafter mentioned, defendant Chem One Ltd. ("Chem One) had and now has the legal status and offices and places of business stated in Schedule "A", and were and now are engaged as manufacturers, distributors, shippers and/or consignees of a certain cargo of 726 bags and cartons containing ammonium chloride, sodium erythrobate, sodium acetate

2

anhydrous, isocyanwric acid technical powder and oxalic acid dihydrate carried aboard the *M/V Rickmers Genoa* pursuant to a Rickmers-Linie bill of lading dated on or about March 3, 2005.

6.      That at all times hereinafter mentioned and at the time of the occurrences herein, the defendant ESM GROUP, INC., its agents, servants, employees, divisions and/or subsidiaries were doing business in the State of New York, and did contract to supply goods and services in the State of New York, and did commit a tortious act within the State of New York, and did commit a tortious act outside the State of New York causing injury to the plaintiff within the State of New York, and regularly solicited business and engaged in a persistent course of conduct, and derived substantial revenue from goods used and consumed and services rendered in the State of New York, and expected and reasonably should have expected its acts to have consequences in the State of New York and derives substantial revenue from interstate and international commerce and owned, used or possessed real property in the State of New York.

7.      That the defendant ESM GROUP, INC., directly and purposely availed themselves of the privilege of conducting business within the State of New York by placing products into the stream of commerce with the intent and expectation that they would be purchased and/or used in the State of New York.

8.      That at all times hereinafter mentioned and at the time of the occurrences herein, the defendant ESM (TIANJIN) CO., LTD., its agents, servants, employees, divisions and/or subsidiaries were doing business in the State of New York, and did contract to supply goods and services in the State of New York, and did commit a tortious act within the State of New York, and did commit a tortious act outside the State of New York causing injury to the plaintiff within the State of New York, and regularly solicited business and engaged in a persistent course of conduct, and derived

3

substantial revenue from goods used and consumed and services rendered in the State of New York, and expected and reasonably should have expected its acts to have consequences in the State of New York and derives substantial revenue from interstate and international commerce and owned, used or possessed real property in the State of New York.

9.    That the defendant ESM (TIANJIN) CO., LTD., directly and purposely availed themselves of the privilege of conducting business within the State of New York by placing products into the stream of commerce with the intent and expectation that they would be purchased and/or used in the State of New York.

10.    That at all times hereinafter mentioned and at the time of the occurrences herein, the defendant Chem One, its agents, servants, employees, divisions and/or subsidiaries were doing business in the State of New York, and did contract to supply goods and services in the State of New York, and did commit a tortious act within the State of New York, and did commit a tortious act outside the State of New York causing injury to the plaintiff within the State of New York, and regularly solicited business and engaged in a persistent course of conduct, and derived substantial revenue from goods used and consumed and services rendered in the State of New York, and expected and reasonably should have expected its acts to have consequences in the State of New York and derives substantial revenue from interstate and international commerce and owned, used or possessed real property in the State of New York.

11.    That the defendant Chem One, directly and purposely availed themselves of the privilege of conducting business within the State of New York by placing products into the stream of commerce with the intent and expectation that they would be purchased and/or used in the State of New York.

4

12.     That at all times hereinafter mentioned and at the time of the occurrences herein, the defendant PUDONG TRANS USA INC., its agents, servants, employees, divisions and/or subsidiaries were doing business in the State of New York, and did contract to supply goods and services in the State of New York, and did commit a tortious act within the State of New York, and did commit a tortious act outside the State of New York causing injury to the plaintiff within the State of New York, and regularly solicited business and engaged in a persistent course of conduct, and derived substantial revenue from goods used and consumed and services rendered in the State of New York, and expected and reasonably should have expected its acts to have consequences in the State of New York and derives substantial revenue from interstate and international commerce and owned, used or possessed real property in the State of New York.

13.     That the defendant PUDONG TRANS USA INC., directly and purposely availed themselves of the privilege of conducting business within the State of New York by placing products into the stream of commerce with the intent and expectation that they would be purchased and/or used in the State of New York.

14.     That at all times hereinafter mentioned and at the time of the occurrences herein, the defendant U. S. SHIPPING, INC., its agents, servants, employees, divisions and/or subsidiaries were doing business in the State of New York, and did contract to supply goods and services in the State of New York, and did commit a tortious act within the State of New York, and did commit a tortious act outside the State of New York causing injury to the plaintiff within the State of New York, and regularly solicited business and engaged in a persistent course of conduct, and derived substantial revenue from goods used and consumed and services rendered in the State of New York, and expected and reasonably should have expected its acts to have consequences in the State of New

5

York and derives substantial revenue from interstate and international commerce and owned, used or possessed real property in the State of New York.

15.     That the defendant U. S. SHIPPING, INC., directly and purposely availed themselves of the privilege of conducting business within the State of New York by placing products into the stream of commerce with the intent and expectation that they would be purchased and/or used in the State of New York.

### COUNT I

16.     On or about the dates and at the port of shipment stated in Schedule "B" attached hereto and by this reference made a part hereof, there was delivered to the vessel *M/V Rickmers Genoa* and Vessel Defendants in good order and condition, the shipment described in Schedule "B", which said vessel and Vessel Defendants received, accepted and agreed to transport for certain consideration to the ports of destination stated in Schedule "B".

17.     Thereafter, the said vessel did not arrive at the port of destination set forth in Schedule "B" and it and Vessel Defendants failed to deliver the shipment in like good order and condition as when shipped, delivered to and received by them, but on the contrary, seriously injured and impaired in value by reason of the matter and things stated in Schedule "B", all in violation of Vessel Defendants' and the said vessel's obligations and duties as common carriers of merchandise by water for hire.

18.     By reason of the premises, the above named vessel and Vessel Defendants breached, failed and violated their duties and obligations as common carriers, bailees, warehousemen, and were otherwise at fault.

6

19.    Plaintiff was the shipper, consignee, or owner of the shipment described in Schedule "B", and brings this action on its own behalf and as agent and trustee, on behalf of and for the interest of all parties who may be or become interested in the said shipment, as their respective interests may ultimately appear, and plaintiff is entitled to maintain this action.

20.    Plaintiff has duly performed all duties and obligations on its part to be performed.

21.    By reason of the premises, plaintiff has sustained damages as nearly as same can now be estimated, no part of which has been paid, in the amount of $253,482.70.

## COUNT II

22.    Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs numbered "1" through "21" as though more fully set forth herein at length.

23.    The Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest, designed, manufactured, sold, distributed and transported the Super Sul MG 89.

24.    That the Super Sul MG 89 was defective and not reasonably fit for its intended use.

25.    That the Super Sul MG 89 was by its improper design, construction, assembly, manufacture and sale, inherently defective and dangerous, not reasonably fit, suitable or safe for its intended purpose and use and posed an unreasonable and forseeable risk of harm to users thereof

26.    That the said product was unreasonably dangerous and defective and was prone to failure.

27.    That the said product was not in conformity with accepted industry and government standards.

28.    That the said product was not approved for sale and distribution.

7

29.    That the subject product was sold, distributed and transported in violation of applicable laws, rules and regulations.

30.    That the subject product was defective by reason of the failure to provide adequate warnings.

31.    That said product was defective in failing to reasonably conform to the expectations of the ultimate consumer, and was otherwise defective.

32.    That the aforesaid defective product proximately caused injury to the plaintiff, including, but not limited to, complete destruction by fire of plaintiff's cargo as described more fully in Schedule B hereto.

33.    That by reason of the foregoing, plaintiff has been damaged in the amount of $253,482.70.

## COUNT III

34.    Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs numbered "1" through "33" as though more fully set forth herein at length.

35.    The Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest, shipped "goods of an inflammable, explosive, or dangerous nature." 46 U.S.C. §1304(6).

36.    Pursuant to 46 U.S.C. §1304(6), the Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest, as shipper of dangerous goods, are strictly liable "for damages resulting directly or indirectly from such shipment when neither the shipper nor the carrier had actual or constructive preshipment knowledge of the danger."

*In Re D G Harmony*, 394 F.Supp.2d 649, 2005 A.M.C. 2528, at 671, quoting *Senator Linie GMBH & Co. KG v. Sunway Line, Inc.*, 291 F.3d 145 (2d Cir. 2002).

37.    Pursuant to 46 U.S.C. §1304(6), the Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest, as shipper of dangerous goods, are strictly liable "'for *all* damages resulting *directly or indirectly* arising out of or resulting from ...[the] shipment' of the dangerous cargo." *In Re D G Harmony*, 394 F.Supp.2d 649, 2005 A.M.C. 2528, at 672, (emphasis in original), quoting 46 U.S.C. §1304(6).

## COUNT IV

38.    Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs numbered "1" through "37" as though more fully set forth herein at length.

39.    The Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest, failed to warn and/or inform of the inherently dangerous, flammable and/or explosive nature of the cargo, and are as such strictly liable for the resulting injury to plaintiff's cargo for all damages and expenses directly or indirectly arising out of or resulting from such conduct pursuant to 46 U.S.C. §1304 and any and all other applicable law.

40.    That as a result of the Super Sul Defendants' failure to provide adequate warning and/or inform of the inherently dangerous, flammable and/or explosive nature of the cargo, said product did release flammable and explosive gas resulting in an explosion aboard the *M/V Rickmers Genoa*.

41.    That the aforesaid failure to warn proximately caused injury to the plaintiff, including, but not limited to, complete destruction by fire of plaintiff's cargo as described more fully in Schedule B hereto.

9

42.     That by reason of the foregoing, plaintiff has been damaged in the amount of $253,482.70.

## COUNT V

43.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs numbered "1" through "42" as though more fully set forth herein at length.

44.     The Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in failing to use reasonable care in the design, manufacture, sale, packaging, distribution and transportation of the Super Sul Mg 89 which was prone to failure and was unfit for its intended use.

45.     The Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in designing, manufacturing, selling, packaging, distributing and transporting a product which it knew or reasonably should have known was substandard, dangerous and defective.

46.     The Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in failing to provide adequate warnings of the hazardous, dangerous, flammable and/or explosive nature of its product.

47.     The Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in failing to provide adequate instructions to the vessel *M/V Rickmers Genoa*, her officers, crew, employees, servants and agents as to the proper method for stowage and transport of the dangerous product.

48.     The Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in failing to provide proper and adequate

labeling and/or placarding on the packaging of the Super Sul Mg 89 which would inform, *inter alia*, the *M/V Rickmers Genoa*, her officers, crew, employees, servants and agents as to the proper method for stowage and transport of the dangerous product.

49.     The Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in designing, manufacturing, selling and distributing a product which it knew or should reasonably have known was defective and unfit for its intended use.

50.     The Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in selling, packaging, distributing and transporting the subject cargo in violation of applicable U.S. and international laws, rules, regulations and codes.

51.     The Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in failing to monitor the manufacture, packaging and transportation of its product.

52.     The Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in failing to perform any testing on its product to determine its hazardous, dangerous, flammable and/or explosive nature under the conditions one would expect or reasonably should have expected to exist during the packaging and transportation of said product.

53.     That as a result of the Super Sul Defendants' negligent acts, said product did release flammable and explosive gas resulting in an explosion aboard the *M/V Rickmers Genoa*.

11

54.     That the aforesaid negligence proximately caused injury to the plaintiff, including, but not limited to, complete destruction by fire of plaintiff's cargo as described more fully in Schedule B hereto.

55.     That by reason of the foregoing, plaintiff has been damaged in the amount of $253,482.70.

## COUNT VI

56.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs numbered "1" through "55" as though more fully set forth herein at length.

57.     Defendant Chem One, its agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest, designed, manufactured, sold, distributed and transported 726 bags and cartons containing ammonium chloride, sodium erythrobate, sodium acetate anhydrous, isocyanwric acid technical powder and oxalic acid dihydrate ("the chemicals").

58.     That one or more of the foregoing chemicals were defective and not reasonably fit for their intended use.

59.     That the one or more of the chemicals were by their improper design, construction, assembly, manufacture and sale, inherently defective and dangerous, not reasonably fit, suitable or safe for their intended purpose and use and posed an unreasonable and forseeable risk of harm to users thereof

60.     That one or more of the chemicals were unreasonably dangerous and defective and was prone to failure.

61.     That one or more of the chemicals were not in conformity with accepted industry and government standards.

12

62.     That one or more of the chemicals were not approved for sale and distribution.

63.     That one or more of the chemicals were sold, distributed and transported in violation of applicable laws, rules and regulations.

64.     That one or more of the subject chemicals were defective by reason of the failure to provide adequate warnings.

65.     That one or more of the chemicals were defective in failing to reasonably conform to the expectations of the ultimate consumer, and were otherwise defective.

66.     That the aforesaid defective product(s) proximately caused injury to the plaintiff, including, but not limited to, complete destruction by fire of plaintiff's cargo as described more fully in Schedule B hereto.

67.     That by reason of the foregoing, plaintiff has been damaged in the amount of $253,482.70.

## COUNT VII

68.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs numbered "1" through "67" as though more fully set forth herein at length.

69.     Chem One, its agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest, shipped "goods of an inflammable, explosive, or dangerous nature." 46 U.S.C. §1304(6).

70.     Pursuant to 46 U.S.C. §1304(6), Chem One, its agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest, as shipper of dangerous goods, are strictly liable "for damages resulting directly or indirectly from such shipment when neither the shipper nor the carrier had actual or constructive preshipment knowledge of the danger." *In Re D G*

*Harmony*,394 F.Supp.2d 649, 2005 A.M.C. 2528, at 671, quoting *Senator Linie GMBH & Co. KG v. Sunway Line, Inc.*, 291 F.3d 145 (2d Cir. 2002).

71.     Pursuant to 46 U.S.C. §1304(6), Chem One, its agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest, as shipper of dangerous goods, are strictly liable "'for *all* damages resulting *directly or indirectly* arising out of or resulting from ...[the] shipment' of the dangerous cargo." *In Re D G Harmony*, 394 F.Supp.2d 649, 2005 A.M.C. 2528, at 672 (emphasis in original), quoting 46 U.S.C. §1304(6).

## COUNT VIII

72.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs numbered "1" through "71" as though more fully set forth herein at length.

73.     Chem One, its agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest, failed to warn and/or inform of the inherently dangerous, flammable and/or explosive nature of its cargo, and are as such strictly liable for the resulting injury to plaintiff's cargo for all damages and expenses directly or indirectly arising out of or resulting from such conduct pursuant to 46 U.S.C. §1304 and any and all other applicable law.

74.     That as a result of Chem One's failure to provide adequate warning and/or inform of the inherently dangerous, flammable and/or explosive nature of its cargo, said chemical(s) did release flammable and explosive gas resulting in an explosion aboard the *M/V Rickmers Genoa*.

75.     That the aforesaid failure to warn proximately caused injury to the plaintiff, including, but not limited to, complete destruction by fire of plaintiff's cargo as described more fully in Schedule B hereto.

14

76.     That by reason of the foregoing, plaintiff has been damaged in the amount of $253,482.70.

## COUNT IX

77.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs numbered "1" through "76" as though more fully set forth herein at length.

78.     Chem One, its agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in failing to use reasonable care in the design, manufacture, sale, packaging, distribution and transportation of the chemicals, one or more of which were prone to failure and were unfit for its/their intended use.

79.     Chem One, its agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in designing, manufacturing, selling, packaging, distributing and transporting a product which it knew or reasonably should have known was substandard, dangerous and defective.

80.     Chem One, its agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in failing to provide adequate warnings of the hazardous, dangerous, flammable and/or explosive nature of its product.

81.     Chem One, its agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in failing to provide adequate instructions to the vessel *M/V Rickmers Genoa*, her officers, crew, employees, servants and agents as to the proper method for stowage and transport of the dangerous product.

82.     Chem One, its agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in failing to provide proper and adequate labeling and/or

placarding on the packaging of the chemicals which would inform, *inter alia*, the *M/V Rickmers Genoa*, her officers, crew, employees, servants and agents as to the proper method for stowage and transport of the dangerous product.

83.     Chem One, its agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in designing, manufacturing, selling and distributing a product which it knew or should reasonably have known was defective and unfit for its intended use.

84.     Chem One, its agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in selling, packaging, distributing and transporting the subject cargo in violation of applicable U.S. and international laws, rules, regulations and codes.

85.     Chem One, its agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in failing to monitor the manufacture, packaging and transportation of its product.

86.     Chem One, its servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in failing to perform any testing on its product to determine its hazardous, dangerous, flammable and/or explosive nature under the conditions one would expect or reasonably should have expected to exist during the packaging and transportation of said product.

87.     That as a result of Chem One's negligent acts, one or more of its chemicals did release flammable and explosive gas resulting in an explosion aboard the *M/V Rickmers Genoa*.

88.     That the aforesaid negligence proximately caused injury to the plaintiff, including, but not limited to, complete destruction by fire of plaintiff's cargo as described more fully in Schedule B hereto.

16

89.     That by reason of the foregoing, plaintiff has been damaged in the amount of $253,482.70.

## COUNT X

90.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs numbered "1" through "89" as though more fully set forth herein at length.

91.     At all times relevant, defendant C S Marine Co., Ltd. was the owned, chartered, managed, controlled and/or crewed the *M/V Sun Cross*.

92.     On or about the March 8, 2005, *M/V Sun Cross* collided with *M/V Rickmers Genoa* in or about the South China Sea.

93.     As a result of said collision, *M/V Rickmers Genoa* was caused to suffer damage.

94.     As a result of said collision, *M/V Rickmers Genoa* was caused to suffer damage from fire and explosion.

95.     As a result of said collision, plaintiff's cargo aboard the *M/V Rickmers Genoa* was completely destroyed by fire and/or explosion.

96.     Said collision was the result of the unseaworthiness of the M/V Sun Cross and the negligence and incompetence of C S Marine Co., Ltd., the crew and the master of the M/V Sun Cross.

97.     C S Marine Co., Ltd., as owners of the non cargo carrying vessel, *M/V Sun Cross*, is fully liable to the cargo of the carrying vessel (M/V Rickmers Genoa). See     *United States v. Reliable Transfer Co.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1973)).

98.     That by reason of the foregoing, plaintiff has been damaged in the amount of $253,482.70.

WHEREFORE, plaintiff requests:

(a)    That process in due form of law may issue against the defendants citing them to appear and answer all and singular the matters aforesaid;

(b)    That if defendants cannot be found within this district, then all their property within this District as shall be described in Schedule "A", be attached in the sum of $253,482.70 with interest thereon and costs, the sum sued for in this Complaint;

(c)    That judgment may be entered in favor of Plaintiff against the defendants for the amount of Plaintiff's damages, together with interest and costs and the disbursements of this action;

(d)    That process in due form of law according to the practice of this Court in causes of admiralty and maritime claims, may issue against said vessels, their engines, etc., and that all persons having or claiming any interest therein be cited to appear and answer under oath, all singular the matters aforesaid, and this Court will be pleased to pronounce judgment in favor of Plaintiff for its damages as aforesaid, with interest, costs and disbursements, and that the said vessels may be condemned and sold to pay therefor, and

(e)     That this Court will grant to Plaintiff such other and further relief as may be just and

proper.

Dated: New York, New York
       July 20, 2006

                        Yours, etc.,

                        **NICOLETTI HORNIG CAMPISE & SWEENEY**
                        Attorneys for Plaintiff

                        By:_____
                        Lawrence C. Glynn (LG-6431)
                        Wall Street Plaza
                        88 Pine Street
                        New York, New York 10005
                        (212) 220-3830
                        NHC&S File No.:    00000634JFS/LCG

## SCHEDULE A

Plaintiff:      Shandong Industrial Inc.
301 Bridge Plaza North
Fort Lee, New Jersey 07024

Defendants:

Rickmers-Linie GmbH & Cie. KG
Neumühlen 19
D-22763
Hamburg, Germany

Genoa Navigation Co. Ltd.
c/o Rickmers Reederei GmbH & CIE. KG
Neumühlen 19
D-22763
Hamburg, Germany

Sunwoo Merchant Marine Co. Ltd.
c/o Sunwoo Shipping Co. Ltd.
7th Floor Dowong Building
128-27 Tangju-dong
Chongno-gu
Seoul 100-071 South Korea

Rickmers Genoa Schiffahrtsges mbH & CIE.
KG
Neumühlen 19
D-22763
Hamburg, Germany

Pudong Trans USA Inc.
9600 Fair Drive #328
El Monte, California 91731

ESM Group, Inc.
300 Corporate Parkway - 261N
Amherst, New York 14226

ESM (Tianjin) Co., Ltd.
c/o ESM Group, Inc.
300 Corporate Parkway - 261N
Amherst, New York 14226

Chem One Ltd.
8017 Pinemont Drive
Houston, TX 77040-6519

U.S. Shipping, Inc.
c/o Ms. Rachel Liu
2321 Highbury Avenue
#51
Los Angeles 90032

C S Marine Co., Ltd.
8F, Ocean B/D
76-13 4GA Chungang-dong,
Chung-Gu
Busan, Korea

20

## SCHEDULE B

| | |
|---|---|
| Vessel: | M/V Rickmers Genoa |
| Bill of Lading: | RCKI153XINCAM49<br>RCKI153XINCAM43<br>RCKI153XINCAM42<br>RCKI153XINCAM44 |
| Date of Shipment: | March 3, 2005 |
| Port of Shipment: | Tianjin, China |
| Port of Discharge: | Camden, New Jersey |
| Shipper: | Shandong Industrial Inc. |
| Consignee: | Shandong Industrial Inc. |
| Description: | 20,736 Cartons of Nails |
| Nature: | Non Delivery - 20,736 Cartons; Total Loss Due to Fire Aboard *M/V Rickmers Genoa* |
| Amount: | $253,482.70 |
| NHC&S File No.: | 00000634JFS/LCG |

## VERIFICATION

STATE OF NEW YORK )
                              ) ss.:
COUNTY OF NEW YORK )

            LAWRENCE C. GLYNN, being duly sworn, deposes and says:

            That he is an attorney admitted to practice before the Courts of this State and is associated with the firm of NICOLETTI HORNIG CAMPISE & SWEENEY, attorneys for Plaintiff herein.

            That he has read the foregoing Verified Complaint and knows the contents thereof and that the same is true to his own knowledge, except as to the matters therein stated to be alleged upon information and belief and as to those matters, he believes them to be true.

            Deponent further says that the sources of his information and the grounds for his belief as to all matters therein stated to be alleged on information and belief, is derived from documents, records, correspondence and memoranda of Plaintiff concerning the maters set forth in the Verified Complaint in the possession of deponent.

                                     Lawrence C. Glynn

Sworn to before me this
2/st day of July, 2006

Notary Public

MARY ANN RAARUP
Notary Public, State of New York
No. 01RA4874099
Qualified in Suffolk County
Certificate filed in New York County
Commission Expires Oct. 20, 20__