**NICOLETTI HORNIG & SWEENEY**
Attorneys for Plaintiff
Wall Street Plaza
88 Pine Street
New York, New York 10005
(212) 220-3830
Attorney: Lawrence C. Glynn (LG 6431)
NHC&S File No.:   00000634JFS/LCG

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
SHANDONG INDUSTRIAL INC.,

     Plaintiff,         Case No.: 05 Civ. 6226 (LAP)

 -against-            **SECOND AMENDED**
                    **VERIFIED COMPLAINT**

M/V "RICKMERS GENOA", her engines, boilers, etc.;
RICKMERS-LINIE GmbH & CIE. KG;
RICKMERS GENOA SCHIFFAHRTSGES mbH
& CIE. KG; GENOA NAVIGATION CO. LTD.;
C S MARINE CO., LTD.;
ESM GROUP, INC.; ESM (TIANJIN) CO., LTD.;
PUDONG TRANS USA INC., and
U.S. SHIPPING, INC.,

     Defendants.
-----------------------------------------------------------------x

  Plaintiff, Shandong Industrial Inc. ("SII" or "Plaintiff") by its attorneys, Nicoletti Hornig Campise & Sweeney, alleges upon information and belief, as follows:

  1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. At and during the times hereinafter mentioned, plaintiff had and now has the legal status and principal place of business stated in Schedule "A" attached hereto and by this reference made a part hereof.

3. At and during all the times hereinafter mentioned, defendants *M/V Rickmers Genoa*, her engines, boilers, etc., Rickmers-Linie GmbH & Cie. KG, Rickmers Genoa Schiffahrtsges mbH & Cie. KG, Genoa Navigation Co. Ltd., Pudong Trans USA Inc., and U.S. Shipping, Inc. (hereinafter "Vessel Defendants") had and now have the legal status and offices and places of business stated in Schedule "A", and were and now are engaged as common carriers of merchandise by water and owned, operated, managed, chartered and controlled the above matter vessels which is now, or will be within the jurisdiction of this Court during the pendency of this action.

4. At and during all the times hereinafter mentioned, defendants ESM Group, Inc., ESM (Tianjin) Co., Ltd., Pudong Trans USA Inc., and U.S. Shipping, Inc., (hereinafter "Super Sul Defendants") had and now have the legal status and offices and places of business stated in Schedule "A", and were and now are engaged as manufacturers, distributors, shippers and/or consignees of a certain cargo of six hundred (600) bags containing Super Sul Mg 89 carried aboard the *M/V Rickmers Genoa* pursuant to Rickmers-Linie bill of lading number RCKI153XINCAM41, dated March 3, 2005.

5. That at all times hereinafter mentioned and at the time of the occurrences herein, the defendant ESM GROUP, INC., their agents, servants, employees, divisions and/or subsidiaries were doing business in the State of New York, and did contract to supply goods and services in the State of New York, and did commit a tortious act within the State of New York, and did commit a tortious act outside the State of New York causing injury to the plaintiff within the State of New York, and

2

regularly solicited business and engaged in a persistent course of conduct, and derived substantial revenue from goods used and consumed and services rendered in the State of New York, and expected and reasonably should have expected its acts to have consequences in the State of New York and derives substantial revenue from interstate and international commerce and owned, used or possessed real property in the State of New York.

6. That the defendant ESM GROUP, INC., directly and purposely availed themselves of the privilege of conducting business within the State of New York by placing products into the stream of commerce with the intent and expectation that they would be purchased and/or used in the State of New York.

7. That at all times hereinafter mentioned and at the time of the occurrences herein, the defendant ESM (TIANJIN) CO., LTD., their agents, servants, employees, divisions and/or subsidiaries were doing business in the State of New York, and did contract to supply goods and services in the State of New York, and did commit a tortious act within the State of New York, and did commit a tortious act outside the State of New York causing injury to the plaintiff within the State of New York, and regularly solicited business and engaged in a persistent course of conduct, and derived substantial revenue from goods used and consumed and services rendered in the State of New York, and expected and reasonably should have expected its acts to have consequences in the State of New York and derives substantial revenue from interstate and international commerce and owned, used or possessed real property in the State of New York.

8. That the defendant ESM (TIANJIN) CO., LTD., directly and purposely availed themselves of the privilege of conducting business within the State of New York by placing products

into the stream of commerce with the intent and expectation that they would be purchased and/or used in the State of New York.

9. That at all times hereinafter mentioned and at the time of the occurrences herein, the defendant PUDONG TRANS USA INC., their agents, servants, employees, divisions and/or subsidiaries were doing business in the State of New York, and did contract to supply goods and services in the State of New York, and did commit a tortious act within the State of New York, and did commit a tortious act outside the State of New York causing injury to the plaintiff within the State of New York, and regularly solicited business and engaged in a persistent course of conduct, and derived substantial revenue from goods used and consumed and services rendered in the State of New York, and expected and reasonably should have expected its acts to have consequences in the State of New York and derives substantial revenue from interstate and international commerce and owned, used or possessed real property in the State of New York.

10. That the defendant PUDONG TRANS USA INC., directly and purposely availed themselves of the privilege of conducting business within the State of New York by placing products into the stream of commerce with the intent and expectation that they would be purchased and/or used in the State of New York.

11. That at all times hereinafter mentioned and at the time of the occurrences herein, the defendant U. S. SHIPPING, INC., their agents, servants, employees, divisions and/or subsidiaries were doing business in the State of New York, and did contract to supply goods and services in the State of New York, and did commit a tortious act within the State of New York, and did commit a tortious act outside the State of New York causing injury to the plaintiff within the State of New York, and regularly solicited business and engaged in a persistent course of conduct, and derived

substantial revenue from goods used and consumed and services rendered in the State of New York, and expected and reasonably should have expected its acts to have consequences in the State of New York and derives substantial revenue from interstate and international commerce and owned, used or possessed real property in the State of New York.

12. That the defendant U. S. SHIPPING, INC., directly and purposely availed themselves of the privilege of conducting business within the State of New York by placing products into the stream of commerce with the intent and expectation that they would be purchased and/or used in the State of New York.

## COUNT I

13. On or about the dates and at the port of shipment stated in Schedule "B" attached hereto and by this reference made a part hereof, there was delivered to the vessel *M/V Rickmers Genoa* and Vessel Defendants in good order and condition, the shipment described in Schedule "B", which said vessel and Vessel Defendants received, accepted and agreed to transport for certain consideration to the ports of destination stated in Schedule "B".

14. Thereafter, the said vessel did not arrive at the port of destination set forth in Schedule "B" and it and Vessel Defendants failed to deliver the shipment in like good order and condition as when shipped, delivered to and received by them, but on the contrary, seriously injured and impaired in value by reason of the matter and things stated in Schedule "B", all in violation of Vessel Defendants' and the said vessel's obligations and duties as common carriers of merchandise by water for hire.

15. By reason of the premises, the above named vessel and Vessel Defendants breached, failed and violated their duties and obligations as common carriers, bailees, warehousemen, and were otherwise at fault.

16. Plaintiff was the shipper, consignee, or owner of the shipment described in Schedule "B", and brings this action on its own behalf and as agent and trustee, on behalf of and for the interest of all parties who may be or become interested in the said shipment, as their respective interests may ultimately appear, and plaintiff is entitled to maintain this action.

17. Plaintiff has duly performed all duties and obligations on its part to be performed.

18. By reason of the premises, plaintiff has sustained damages as nearly as same can now be estimated, no part of which has been paid, in the amount of $253,482.70.

## COUNT II

19. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs numbered "1" through "18" as though more fully set forth herein at length.

20. The Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest, designed, manufactured, sold, distributed and transported the Super Sul MG 89.

21. That the Super Sul MG 89 was defective and not reasonably fit for its intended use.

22. That the Super Sul MG 89 was by its improper design, construction, assembly, manufacture and sale, inherently defective and dangerous, not reasonably fit, suitable or safe for its intended purpose and use and posed an unreasonable and forseeable risk of harm to users thereof

23. That the said product was unreasonably dangerous and defective and was prone to failure.

24. That the said product was not in conformity with accepted industry and government standards.

25. That the said product was not approved for sale and distribution.

26. That the subject product was sold, distributed and transported in violation of applicable laws, rules and regulations.

27. That the subject product was defective by reason of the failure to provide adequate warnings.

28. That said product was defective in failing to reasonably conform to the expectations of the ultimate consumer, and was otherwise defective.

29. That the aforesaid defective product proximately caused injury to the plaintiff, including, but not limited to, complete destruction by fire of plaintiff's cargo as described more fully in Schedule B hereto.

30. That by reason of the foregoing, plaintiff has been damaged in the amount of $253,482.70.

## COUNT III

31. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs numbered "1" through "30" as though more fully set forth herein at length.

32. The Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest, shipped "goods of an inflammable, explosive, or dangerous nature." *See* historical and statutory notes (§§4(3) and (6)) of 46 U.S.C. §30701; *see also* Pub. L. No. 109-304, 120 Stat. 1485 (2006); 46 U.S.C.A. §30701 (2007); *Rexroth Hydraudyne B.V.*

*v. Ocean World Lines, Inc.*, 547 F.3d 351, 354 n.2 (2d Cir. 2008), referred to herein for simplicity's sake as §§4(3) and (6).

33. Pursuant to §4(6), the Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest, as shipper of dangerous goods, are strictly liable "for damages resulting directly or indirectly from such shipment when neither the shipper nor the carrier had actual or constructive preshipment knowledge of the danger." *In Re D G Harmony*, 394 F.Supp.2d 649 (S.D.N.Y. 2005), quoting *Senator Linie GMBH & Co. KG v. Sunway Line, Inc.*, 291 F.3d 145 (2d Cir. 2002).

34. Pursuant to §4(6), the Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest, as shipper of dangerous goods, are strictly liable "'for *all* damages resulting *directly or indirectly* arising out of or resulting from ...[the] shipment' of the dangerous cargo." *In Re D G Harmony*, 394 F.Supp.2d 649 (S.D.N.Y. 2005) (italics in original), quoting §4(6)

## COUNT IV

35. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs numbered "1" through "34" as though more fully set forth herein at length.

36. The Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest, failed to warn and/or inform of the inherently dangerous, flammable and/or explosive nature of the cargo, and are as such strictly liable for the resulting injury to plaintiff's cargo fro all damages and expenses directly or indirectly arising out of or resulting from such conduct pursuant to 46 U.S.C. §1304 and any and all other applicable law.

37. That as a result of the Super Sul Defendants' failure to provide adequate warning and/or inform of the inherently dangerous, flammable and/or explosive nature of the cargo, said product did release flammable and explosive gas resulting in an explosion aboard the *M/V Rickmers Genoa*.

38. That the aforesaid failure to warn proximately caused injury to the plaintiff, including, but not limited to, complete destruction by fire of plaintiff's cargo as described more fully in Schedule B hereto.

39. That by reason of the foregoing, plaintiff has been damaged in the amount of $253,482.70.

## COUNT V

40. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs numbered "1" through "39" as though more fully set forth herein at length.

41. The Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in failing to use reasonable care in the design, manufacture, sale, packaging, distribution and transportation of the Super Sul Mg 89 which was prone to failure and was unfit for its intended use.

42. The Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in designing, manufacturing, selling, packaging, distributing and transporting a product which it knew or reasonably should have known was substandard, dangerous and defective.

43. The Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in failing to provide adequate warnings of the hazardous, dangerous, flammable and/or explosive nature of its product.

44. The Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in failing to provide adequate instructions to the vessel *M/V Rickmers Genoa*, her officers, crew, employees, servants and agents as to the proper method for stowage and transport of the dangerous product.

45. The Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in failing to provide proper and adequate labeling and/or placarding on the packaging of the Super Sul Mg 89 which would inform, *inter alia*, the *M/V Rickmers Genoa*, her officers, crew, employees, servants and agents as to the proper method for stowage and transport of the dangerous product.

46. The Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in designing, manufacturing, selling and distributing a product which it knew or should reasonably have known was defective and unfit for its intended use.

47. The Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in selling, packaging, distributing and transporting the subject cargo in violation of applicable U.S. and international laws, rules, regulations and codes.

48. The Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in failing to monitor the manufacture, packaging and transportation of its product.

49. The Super Sul Defendants, their agents, servants, employees, subsidiaries and/or predecessors and/or successors in interest were negligent in failing to perform any testing on its product to determine its hazardous, dangerous, flammable and/or explosive nature under the conditions one would expect or reasonably should have expected to exist during the packaging and transportation of said product.

50. That as a result of the Super Sul Defendants' negligent acts, said product did release flammable and explosive gas resulting in an explosion aboard the *M/V Rickmers Genoa*.

51. That the aforesaid negligence proximately caused injury to the plaintiff, including, but not limited to, complete destruction by fire of plaintiff's cargo as described more fully in Schedule B hereto.

52. That by reason of the foregoing, plaintiff has been damaged in the amount of $253,482.70.

## COUNT VI

53. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs numbered "1" through "52" as though more fully set forth herein at length.

54. ESM Group and ESMT, at all relevant times, acted as principal and agent, partners, alterego and/or joint venturers, and hence, as principal and agent, partners and/or joint venturers, each should be liable to the plaintiffs for all amounts claimed herein.

55. At all relevant times, ESM Group established and used ESMT as its agent for the sole purpose of manufacturing SS-89 and its component parts.

56. At all relevant times, ESM Group had complete and sole authority to direct ESMT's production of goods, distribute its goods, sell to other buyers and/or otherwise conduct business.

57. At all relevant times, ESM Group and ESMT were not acting as arms-length contracting parties.

58. The assets of ESM Group and ESMT are intermingled and hence, each should be liable to Plaintiff for all amounts claimed herein.

59. ESMT is an agent and/or alterego which is dominated and controlled by ESM Group, in disregard of corporate formalities and corporate separation, and hence, they each should each be liable to Plaintiff for all amounts claimed herein.

39. That by reason of the foregoing, plaintiff has been damaged in the amount of $253,482.70.

WHEREFORE, plaintiff requests:

(a) That process in due form of law may issue against the defendants citing them to appear and answer all and singular the matters aforesaid;

(b) That if defendants cannot be found within this district, then all their property within this District as shall be described in Schedule "A", be attached in the sum of $253,482.70 with interest thereon and costs, the sum sued for in this Complaint;

(c) That judgment may be entered in favor of Plaintiff against the defendants for the amount of Plaintiff's damages, together with interest and costs and the disbursements of this action;

(d) That process in due form of law according to the practice of this Court in causes of admiralty and maritime claims, may issue against said vessels, their engines, etc., and that all persons having or claiming any interest therein be cited to appear and answer under oath, all singular the matters aforesaid, and this Court will be pleased to pronounce judgment in favor of Plaintiff for its damages as aforesaid, with interest, costs and disbursements, and that the said vessels may be condemned and sold to pay therefor, and

(e) That this Court will grant to Plaintiff such other and further relief as may be just and proper.

Dated: New York, New York
       April 9, 2009

        Yours, etc.,

        **NICOLETTI HORNIG & SWEENEY**
        Attorneys for Plaintiff

        By: _____
        Lawrence C. Glynn (LG-6431)
        Wall Street Plaza
        88 Pine Street
        New York, New York 10005
        (212) 220-3830
        NH&S File No.:       00000634LCG

## **SCHEDULE A**

Plaintiff:    Shandong Industrial Inc.
              301 Bridge Plaza North
              Fort Lee, New Jersey 07024

Defendants:

| | |
|---|---|
| Rickmers-Linie GmbH & Cie. KG<br>Neumühlen 19<br>D-22763<br>Hamburg, Germany | Rickmers Genoa Schiffahrtsges<br>mbH & CIE. KG<br>Neumühlen 19<br>D-22763<br>Hamburg, Germany |
| Pudong Trans USA Inc.<br>c/o Shanghai Pudong Transportation<br>Hangzhou Office<br>Room 608, Zhongshan Building<br>Zhongshan Zhong Road<br>310012 China | Rickmers Genoa Schiffahrtsges<br>mbH & CIE. KG<br>Neumühlen 19<br>D-22763<br>Hamburg, Germany |
| ESM Group, Inc.<br>300 Corporate Parkway - 261N<br>Amherst, New York 14226 | ESM (Tianjin) Co., Ltd.<br>c/o ESM Group, Inc.<br>300 Corporate Parkway - 261N<br>Amherst, New York 14226 |
| U.S. Shipping, Inc.<br>c/o Ms. Rachel Liu<br>2321 Highbury Avenue<br>#51<br>Los Angeles 90032 | |

## SCHEDULE B

| | |
|---|---|
| Vessel: | M/V Rickmers Genoa |
| Bill of Lading: | RCKI153XINCAM49<br>RCKI153XINCAM43<br>RCKI153XINCAM42<br>RCKI153XINCAM44 |
| Date of Shipment: | March 3, 2005 |
| Port of Shipment: | Tianjin, China |
| Port of Discharge: | Camden, New Jersey |
| Shipper: | Shandong Industrial Inc. |
| Consignee: | Shandong Industrial Inc. |
| Description: | 20,736 Cartons of Nails |
| Nature: | Non Delivery - 20,736 Cartons; Total Loss Due to Fire Aboard *M/V Rickmers Genoa* |
| Amount: | $253,482.70 |
| NH&S File No.: | 00000634LCG |

## VERIFICATION

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK     )

LAWRENCE C. GLYNN, being duly sworn, deposes and says:

That he is an attorney admitted to practice before the Courts of this State and is associated with the firm of NICOLETTI HORNIG & SWEENEY, attorneys for Plaintiff herein.

That he has read the foregoing Verified Complaint and knows the contents thereof and that the same is true to his own knowledge, except as to the matters therein stated to be alleged upon information and belief and as to those matters, he believes them to be true.

Deponent further says that the sources of his information and the grounds for his belief as to all matters therein stated to be alleged on information and belief, is derived from documents, records, correspondence and memoranda of Plaintiff concerning the maters set forth in the Verified Complaint in the possession of deponent.

_____
Lawrence C. Glynn

Sworn to before me this
9th day of April, 2009

_____
Notary Public

MARY ANN RAARUP
Notary Public, State of New York
No. 01RA4874099
Qualified in Suffolk County
Certificate filed in New York County
Commission Expires Oct. 20, 2012

16